

IN THE DISTRICT COURT IN AND FOR COMANCHE COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES JONES, individually and<br>as Personal Representative of the<br>Estate of Matthew Tyler Jones, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) <br> ) | **CASE NO.: CJ-2024-374**<br>**JUDGE: Grant Sheperd** |
| v. | ) <br> ) | |
| 1. COMANCHE COUNTY<br>FACILITIES AUTHORITY,<br>2. BOARD OF COUNTY<br>COMMISSIONERS of COMANCHE<br>COUNTY,<br>3. WILLIAM HOBBS, in his<br>individual capacity,<br>4. CALVIN RISS, an individual,<br>5. EDWARD BROWN, an individual,<br>6. MARKIE ISHMAN, an individual,<br>7. CALVIN WYNN, an individual,<br>8. JOHN/JANE DOES I-X, in their<br>Individual Capacities, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | | |

---

## FIRST AMENDED PETITION

---

Charles L. Richardson, OBA No. 13388
Colton L. Richardson, OBA No. 33767
RICHARDSON RICHARDSON BOUDREAUX
7447 South Lewis Avenue
Tulsa, OK 74136
(918) 888-8000
*Attorneys for Plaintiff*
*Jury Trial Demanded*
*Attorney Lien Claimed*

Exhibit 3

2

**Exhibit 3**

## IN THE DISTRICT COURT IN AND FOR COMANCHE COUNTY
## STATE OF OKLAHOMA

CHARLES JONES, individually and )
as Personal Representative of the )
Estate of Matthew Tyler Jones, )
                             )
        Plaintiff, )     **CASE NO.: CJ-2024-374**
                             )     **JUDGE: Grant Sheperd**
v. )
                             )
1. COMANCHE COUNTY )
FACILITIES AUTHORITY, )
2. BOARD OF COUNTY )
COMMISSIONERS of COMANCHE )
COUNTY, )
3. WILLIAM HOBBS, in his )
individual capacity, )
4. CALVIN RISS, an individual, )
5. EDWARD BROWN, an individual, )
6. MARKIE ISHMAN, an individual, )
7. CALVIN WYNN, an individual, )
                             )
        Defendants. )

## FIRST AMENDED PETITION

COMES NOW Plaintiff, Charles Jones, individually and as Personal Representative of the Estate of Matthew Tyler Jones (hereafter referred to as "Plaintiff"), by and through counsel of record, Richardson Richardson Boudreaux PLLC, and for his petition for relief in excess of Seventy-five Thousand Dollars ($75,000.00) against Defendants Comanche County Facilities Authority, Board of County Commissioners of Comanche County, William Hobbs, Calvin Riss, Edward Brown, Markie Ishman, and Calvin Wynn, (hereafter collectively referred to as "Defendants"), states as follows:

3

**Exhibit 3**

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Charles Jones is a resident of Lawn, Texas, in Taylor County.

2. Plaintiff Matthew Tyler Jones, ("Decedent"), was an inmate in the Comanche County Detention Center in Comanche County, Oklahoma at the time of his murder.

3. Defendant Comanche County Facilities Authority ("CCFA") (a/k/a Comanche County Detention Center Public Trust) operates the Comanche County Detention Center ("CCDC") in Lawton, Oklahoma. CCFA was created by and is managed by the Board of County Commissioners for Comanche County, Oklahoma. The Board of Board of County Commissioners for Comanche County, Oklahoma is a political subdivision of the State of Oklahoma. Comanche County is the sole beneficiary of CCFA and the CCDC houses federal inmates.

4. Defendant Board of County Commissioners of Comanche County ("BOCC") is a political subdivision of the State of Oklahoma located and operating within Comanche County, Oklahoma.

5. Defendant William Hobbs ("Hobbs") was the Administrator of the CCDC at the time of the events giving rise to this lawsuit and is sued in his individual capacity for his acts and omissions taken under color of law. During the timeframe relevant to this lawsuit, Hobbs was responsible for, among other things, ensuring (1) the safety and well-being of detainees and inmates at the CCDC, (2) that the CCDC confirms the applicable laws and regulations, and (3) adequate creation, approval, and enforcement of rules, regulations, policies, and procedures. Upon information and belief, Hobbs resides in Comanche County.

6. Defendant Calvin Riss, at all times relevant to the claims alleged here, resided in Comanche County, Oklahoma.

7. Defendant Edward Brown, at all times relevant to the claims alleged here, resided in Comanche County, Oklahoma.

4

**Exhibit 3**

8. Defendant Markie Ishman, at all times relevant to the claims alleged here, resided in Comanche County, Oklahoma.

9. Defendant Calvin Wynn, at all times relevant to the claims alleged here, resided in Comanche County, Oklahoma.

10. Defendants John and Jane Does I-X are individual detention officers or personnel who, acting under color law, engaged in deliberate indifference and violated the constitutional rights of Jones in their respective capacities while working at the CCDC. The specific identities of Defendants John and Jane Does I-X are currently unknown despite Plaintiff's reasonable efforts available to him at this time. It is Plaintiff's intention to clarify the identities of Defendants John and Jane Does I-X once he is able to discover this information through the processes that litigation affords, namely, information that will be obtained from the Oklahoma State Bureau of Investigation ("OSBI"), who investigated the death of Decedent. The OSBI report and other documents to be obtained through discovery will help further identify these Defendants.

11. The event giving rise to this action occurred in Comanche County, Oklahoma.

12. Jurisdiction is proper in the State of Oklahoma District Court since the amount in controversy exceeds $75,000.00 and the parties are all residents of the State of Oklahoma.

13. Venue is proper in the Comanche County District Court pursuant to Okla. Stat. tit. 12 §141 which sets venue "[i]n any county of Oklahoma where service of summons can be obtained upon one or more of the defendants" and/or "[i]n any county where the damages or a part thereof were sustained."

RELEVANT FACTS

14. Plaintiff incorporates the above paragraphs as though stated below verbatim.

5

<strong>Exhibit 3</strong>

15. Matthew Tyler Jones, deceased ("Decedent"), was an inmate in Comanche County Detention Center ("CCDC") at the time of his death on or around August 23, 2023.

16. At the time of Decedent's death, Calvin Riss was an inmate in CCDC and was in the same unit, or pod, as the Decedent.

17. At the time of Decedent's death, Edward Brown was an inmate in CCDC and was in the same unit, or pod, as the Decedent.

18. At the time of Decedent's death, Markie Ishman was an inmate in CCDC and was in the same unit, or pod, as the Decedent.

19. At the time of Decedent's death, Calvin Wynn was an inmate in CCDC and was in the same unit, or pod, as the Decedent.

20. On or around August 16, 2023, Defendants conspired and brutally stabbed Matthew Jones, eventually leading to his death.

21. At all times relevant, BOCC had authority over and control of funding for the CCFA and CCDC.

22. The BOCC is responsible for making major financial decisions, transacting those decisions, preparing budgets awarding contracts, and acting on claims.

23. The BOCC must consider the estimated needs of each county office annually.

**At the Time of Jones' Detention, there were Numerous Unlawful Policies and Customs at the CCDC**

24. At the time of Jones' detention, there were numerous unlawful informal customs amounting to widespread practices that were so permanent and well settled as to constitute a custom or usage with the force of law. These informal customs in place at the CCDC related to Jones' injuries and death, include, but are not limited to:

    a. Continued overcapacity and overcrowding of inmates in the CCDC overall which

6

**Exhibit 3**

strained all aspects of CCDC functionality and caused inadequate monitoring of the inmate population;

b. Continued overcapacity and overcrowding of the inmates in particular cells which caused inadequate monitoring of the inmate population;

c. Failures to adequately monitor the inmate population and to perform full and proper sight checks; and

d. Inadequate staffing levels and ratios.

25. At the time of Jones' detention, there were decisions made directly by Hobbs, a person with final decision-making authority, regarding the aforementioned deficiencies. Hobbs also failed to adequately address these issues and concerns, specifically regarding Jones' detention, which all ultimately contributed to and caused Jones' injuries and death.

26. At the time of Jones' detention, Hobbs, a person with final decision-making authority, ratified the decision (and related bases for them) of subordinates to whom authority was delegated regarding (1) the aforementioned deficiencies and (2) these issues and concerns specifically regarding Jones' detention, which all ultimately contributed to Jones' injuries and death.

27. At the time of Jones' detention, there was a failure to adequately train and/or supervise CCDC personnel specifically regarding the aforementioned deficiencies. The failures to train and/or supervise were done with deliberate indifference.

## CCDC has a Long History of Deficient Practices which has been Documented and Reported to CCFA by the Oklahoma State Department of Health

28. The Oklahoma State Department of Health's ("OSDH") Jail Inspection Division is one of the primary Oklahoma agencies that investigates and inspects correctional facilities in Oklahoma for statutory and regulatory compliance, including but not limited to 74 O.S. §

7

**Exhibit 3**

192, *et seq.* and regulations in the Oklahoma Administrative Code ("OAC") at Section 310, Chapter 670. Over the years, the OSDH has consistently substantiated continued deficiencies at the CCDC.

29. In a January 28, 2016 inspection working in conjunction with the OSDH, the Oklahoma State Fire Marshall found that CCDC was operating over its capacity. The OSDH's established occupant load for the CCDC was 283. The load was 304.

30. In a February 24, 2016 inspection, the OSDH confirmed that the CCDC was again operating overcapacity by 21 inmates and found the CCDC in violation of OAC 310:670-5-11(a)(2).

31. In a December 15, 2016 inspection, the OSDH found that the CCDC failed to submit required training schedules and found the CCDC in violation of OAC 310:670-5-10(3).

32. In a February 28, 2017 inspection, the OSDH found that (1) the CCDC failed to ensure cell capacities in multiple units; and (2) the CCDC was again overcapacity with 332 inmates compared to the CCDC's rating of 283 inmates. The OSDH found the CCDC in violation of OAC 310:670-5-11(b)(6).

33. In a January 16, 2019 inspection, the OSDH found that the CCDC failed to (1) ensure cell capacity, again in violation of the OAC 310:670-5-11.

34. In a October 2, 2019 inspection, the OSDH found that the CCDC failed to, among other deficiencies, (1) adhere to the rated capacity of 283 by having 335 inmates; and (2) adhere to rated capacities of particular cells, which is overcrowding. The OSDH found the CCDC in violation of 310:670-5-11.

35. In a December 13, 2019 inspection, the OSDH found that the CCDC failed to (a) adhere to the rated capacity of 283 by having 347 inmates; and (2) adhere to rated capacities of

8

**Exhibit 3**

particular cells. The OSDH found the CCDC in violation of OAC 310:670-5-11(a)(2).

36. In a January 19, 2021 inspection, the OSDH found that the CCDC failed to properly undertake 24-hour supervision of all inmate activities.

37. In a September 22, 2021 inspection, the OSDH found that the CCDC failed to (1) adhere to the rated capacity of 283 by having 284 inmates; and (2) conduct and document sight checks of inmates. The OSDH found the CCDC in violation of OAC 310:670-5-11(b)(8), 5-11(b)(6)(8), and 5-2(3).

38. In a September 15, 2022 inspection, the OSDH initiated an investigation following an inmate death and found that the CCDC failed to (1) adhere to the rated capacity of 283 by having 311 inmates; (2) conduct or document 34 required sight checks in connection with the death; (3) properly observe an inmate whose screening indicated a significant suicide risk; and (4) conduct or document 165 required sight checks for a different inmate.

39. In a February 22, 2023 inspection, the OSDH found that the CCDC failed to follow the laws and was in violation of OAC 310:670-5-8(2)(B)(i).

40. In a June 20, 2023 inspection, the OSDH found that the CCDC had numerous more deficiencies and violations of the law. First, the CCDC failed to adhere to the rated capacity of 283 by having 369 inmates, more than 30% over capacity. Second, CCDC failed to provide hourly sight check logs for inmates. Third, CCDC failed to properly notify OSDH of a death. Fourth, CCDC failed to keep the facilities clean.

41. Photos from some of the OSDH's inspection of the CCDC are indicative of the chronic overcapacity, overcrowding, and overpopulation of the CCDC. These photos show the lack of facility upkeep, detainees/inmates crowded in cells and sleeping in hallways and under the stairs, and a chaotic environment that explains why so many things have and continue

9

**Exhibit 3**

to go wrong at the CCDC.



10

**Exhibit 3**





11

**Exhibit 3**

**Hobbs' Own Admissions and the CCFA's Own Meeting Minutes Confirm a Pattern and Practice of Overcrowding Cells and Overcapacity Beyond the CCDC's Rated Capacity**

42. Hobbs has openly admitted that the CCDC had a pattern of overcrowding specifically for the year of 2023 when Jones' died. In an interview given with ABC 7 News that was published on January 18, 2024, Hobbs stated that one contributing factor to the spike in the 2023 inmate deaths was "overcrowding," and that was a perpetual problem since the CCDC was built over 20 years ago. Hobbs stated that "[w]hen we moved over her into the new jail in January of 2004, we moved 160 inmates over here from the jail that housed somewhere around 90 inmates. It did not take a year and a half after that, and we're overcrowded. They just keep coming." Hobbs also admitted that there was a pattern of failing to retain corrections officers.

43. Comanche County District 3 Commissioner Josh Powers (who has served as the liaison between the County Commissioners and the CCFA) has also openly admitted that the CCDC has an overcrowding problem. Indeed, during a County Commissioner meeting on or around February 5, 2024, Powers gave the CCFA administration a warning about being over the state capacity limits. Powers even specifically acknowledged the tie in causation between the CCDC's chronic overcapacity issues and how these continued issues would impact the inmate population and stated in part that "[b]y that number going over, you're subjecting the county to a liability issue".

44. BOCC has the responsibility and duty to adequately fund the CCFA and ensure it has adequate resources to not violate inmates' Constitutional rights.

45. The CCFA's published Regular Meeting minutes (which typically contain two population recording dates in each set of minutes) confirm chronic overpopulation trends that the CCDC over the rated capacity of 283. The CCFA's minutes confirmed the following

12

**Exhibit 3**

overpopulation entries from 2021 through the date of Jones' attack on August 16, 2023,

leading to his death:

| | | |
|---|---|---|
| January 4, 2021 | 285 | January 4, 2021 |
| January 19, 2021 | 291 | January 19, 2021 |
| March 15, 2021 | 284 | March 12, 2021 |
| March 15, 2021 | 291 | March 15, 2021 |
| March 22, 2021 | 291 | March 22, 2021 |
| March 29, 2021 | 289 | March 29, 2021 |
| April 5, 2021 | 301 | April 5, 2021 |
| April 12, 2021 | 294 | April 12, 2021 |
| April 26, 2021 | 293 | April 23, 2021 |
| August 9, 2021 | 292 | August 9, 2021 |
| August 16, 2021 | 297 | August 13, 2021 |
| August 16, 2021 | 306 | August 16, 2021 |
| August 23, 2021 | 292 | August 20, 2021 |
| August 23, 2021 | 292 | August 23, 2021 |
| August 30, 2021 | 300 | August 27, 2021 |
| August 30, 2021 | 315 | August 30, 2021 |
| September 7, 2021 | 290 | September 3, 2021 |
| September 7, 2021 | 295 | September 7, 2021 |
| September 13, 2021 | 301 | September 10, 2021 |
| September 13, 2021 | 299 | September 13, 2021 |
| September 27, 2021 | 293 | September 27, 2021 |
| October 4, 2021 | 289 | October 1, 2021 |
| October 4, 2021 | 291 | October 4, 2021 |
| October 11, 2021 | 303 | October 8, 2021 |
| October 11, 2021 | 304 | October 11, 2021 |
| October 18, 2021 | 297 | October 15, 2021 |
| October 18, 2021 | 304 | October 18, 2021 |
| October 25, 2021 | 285 | October 25, 2021 |
| November 1, 2021 | 286 | November 1, 2021 |
| November 15, 2021 | 285 | November 15, 2021 |
| November 22, 2021 | 279 | November 22, 2021 |
| December 13, 2021 | 266 | December 13, 2021 |
| April 18, 2022 | 292 | April 18, 2022 |
| April 25, 2022 | 292 | April 22, 2022 |
| April 25, 2022 | 295 | April 25, 2022 |
| May 9, 2022 | 298 | May 6, 2022 |

**Exhibit 3**

| | | |
|---|---|---|
| May 9, 2022 | 307 | May 9, 2022 |
| May 16, 2022 | 298 | May 13, 2022 |
| May 16, 2022 | 289 | May 16, 2022 |
| June 20, 2022 | 309 | June 17, 2022 |
| June 20, 2022 | 319 | June 20, 2022 |
| June 27, 2022 | 294 | June 24, 2022 |
| June 27, 2022 | 308 | June 27, 2022 |
| July 5, 2022 | 301 | July 1, 2022 |
| July 5, 2022 | 315 | July 5, 2022 |
| July 11, 2022 | 320 | July 8, 2022 |
| July 11, 2022 | 339 | July 11, 2022 |
| July 25, 2022 | 325 | July 22, 2022 |
| July 25, 2022 | 337 | July 25, 2022 |
| August 1, 2022 | 343 | July 29, 2022 |
| August 1, 2022 | 356 | August 1, 2022 |
| August 8, 2022 | 338 | August 5, 2022 |
| August 8, 2022 | 343 | August 8, 2022 |
| August 15, 2022 | 339 | August 12, 2022 |
| August 15, 2022 | 352 | August 15, 2022 |
| August 22, 2022 | 341 | August 19, 2022 |
| August 22, 2022 | 343 | August 22, 2022 |
| August 29, 2022 | 326 | August 26, 2022 |
| August 29, 2022 | 331 | August 29, 2022 |
| September 6, 2022 | 314 | September 2, 2022 |
| September 6, 2022 | 330 | September 6, 2022 |
| September 12, 2022 | 309 | September 9, 2022 |
| September 12, 2022 | 319 | September 12, 2022 |
| September 19, 2022 | 318 | September 16, 2022 |
| September 19, 2022 | 317 | September 19, 2022 |
| September 26, 2022 | 329 | September 23, 2022 |
| September 26, 2022 | 340 | September 26, 2022 |
| October 3, 2022 | 326 | September 30, 2022 |
| October 3, 2022 | 333 | October 3, 2022 |
| October 10, 2022 | 326 | October 7, 2022 |
| October 10, 2022 | 334 | October 10, 2022 |
| October 17, 2022 | 345 | October 14, 2022 |
| October 17, 2022 | 339 | October 17, 2022 |
| October 31, 2022 | 336 | October 28, 2022 |
| October 31, 2022 | 345 | October 31, 2022 |
| November 7, 2022 | 333 | November 4, 2022 |
| November 7, 2022 | 337 | November 7, 2022 |

**Exhibit 3**

| | | |
|---|---|---|
| November 21, 2022 | 332 | November 18, 2022 |
| November 21, 2022 | 342 | November 21, 2022 |
| November 28, 2022 | 329 | November 23, 2022 |
| November 28, 2022 | 329 | November 28, 2022 |
| December 5, 2022 | 305 | December 2, 2022 |
| December 5, 2022 | 310 | December 5, 2022 |
| December 19, 2022 | 292 | December 16, 2022 |
| December 19, 2022 | 310 | December 19, 2022 |
| January 3, 2023 | 291 | December 30, 2022 |
| January 3, 2023 | 306 | January 3, 2023 |
| January 17, 2023 | 312 | January 13, 2023 |
| January 17, 2023 | 329 | January 17, 2023 |
| January 23, 2023 | 329 | January 20, 2023 |
| January 23, 2023 | 331 | January 23, 2023 |
| January 30, 2023 | 324 | January 27, 2023 |
| January 30, 2023 | 339 | January 30, 2023 |
| February 6, 2023 | 338 | February 3, 2023 |
| February 6, 2023 | 359 | February 6, 2023 |
| March 6, 2023 | 329 | March 3, 2023 |
| March 6, 2023 | 339 | March 6, 2023 |
| March 27, 2023 | 355 | March 24, 2023 |
| March 27, 2023 | 371 | March 27, 2023 |
| April 3, 2023 | 359 | March 31, 2023 |
| April 3, 2023 | 365 | April 3, 2023 |
| April 10, 2023 | 358 | April 6, 2023 |
| April 10, 2023 | 369 | April 10, 2023 |
| April 17, 2023 | 348 | April 14, 2023 |
| April 17, 2023 | 361 | April 17, 2023 |
| April 24, 2023 | 366 | April 21, 2023 |
| April 24, 2023 | 385 | April 24, 2023 |
| May 1, 2023 | 371 | April 28, 2023 |
| May 1, 2023 | 384 | May 1, 2023 |
| May 8, 2023 | 375 | May 5, 2023 |
| May 8, 2023 | 379 | May 8, 2023 |
| May 15, 2023 | 355 | May 12, 2023 |
| May 15, 2023 | 377 | May 15, 2023 |
| May 22, 2023 | 359 | May 19, 2023 |
| May 22, 2023 | 366 | May 22, 2023 |
| May 30, 2023 | 361 | May 26, 2023 |
| May 30, 2023 | 376 | May 30, 2023 |
| June 5, 2023 | 362 | June 2, 2023 |

15

**Exhibit 3**

| | | |
|---|---|---|
| June 5, 2023 | 371 | June 5, 2023 |
| June 12, 2023 | 359 | June 9, 2023 |
| June 12, 2023 | 374 | June 12, 2023 |
| June 23, 2023 | 374 | June 19, 2023 |
| June 23, 2023 | 370 | June 23, 2023 |
| June 30, 2023 | 390 | June 26, 2023 |
| June 30, 2023 | 381 | June 30, 2023 |
| July 7, 2023 | 394 | July 3, 2023 |
| July 7, 2023 | 388 | July 7, 2023 |
| July 17, 2023 | 391 | July 10, 2023 |
| July 17, 2023 | 391 | July 17, 2023 |
| July 24, 2023 | 372 | July 21, 2023 |
| July 24, 2023 | 390 | July 24, 2023 |
| July 31, 2023 | 390 | July 28, 2023 |
| July 31, 2023 | 403 | July 31, 2023 |
| August 7, 2023 | 383 | August 4, 2023 |
| August 7, 2023 | 393 | August 7, 2023 |
| August 14, 2023 | 384 | August 11, 2023 |
| August 14, 2023 | 391 | August 14, 2023 |
| August 21, 2023 | 373 | August 18, 2023 |
| August 21, 2023 | 374 | August 21, 2023 |

**_Judah v. Comanche Cnty. Facilities Auth., No. CIV-14-70-JHP (E.D. Okla.)_**

46. In the _Judah_ Case, a deceased CCDC pretrial detainee's (Lawrence Judah) personal representatives brought suit against the CCFA, Hobbs, and others regarding the decedent's detention at the CCDC and another facility. The Judah Case stemmed from the decedent's death on June 29, 2012. According to the lawsuit, the decedent was wrongfully killed by the CCFA's refusal to render appropriate medical care or attention despite the decedent exhibiting signs of severe head trauma, a closed head injury, and visible injuries.

47. After summary judgment was fully briefed yet undecided, the Judah Case was resolved and then mutually dismissed by the parties on June 9, 2016.

**Exhibit 3**

48. In the _Taylor_ Case, a pretrial detainee of the CCDC brought suit under 42 U.S.C. 1983 alleging that during his detention at the CCDC, the CCFA and Hobbs violated his constitutional rights by failing to protect him from being assaulted by another inmate. _Id._ at *1.

49. Judge Goodwin of this Court denied the CCFA's Motion for Summary Judgment regarding the plaintiff's municipal liability failure-to-protect claim. _Id._ at *10.

50. Regarding deficient training, the Court also found that the plaintiff had submitted evidence to support those allegations. _Id._

51. Although Taylor was an inmate violence case, several of the operational deficiencies of the CCDC are directly relevant to the instant case for establishing municipal liability. These include the following:

    a. General overcrowding of the CCDC;

    b. Insufficient and inadequate supervision of inmates;

    c. Inadequate training; and

    d. Failure to secure inmates.

_Id._ at *5.

52. Regarding general overcrowding, the _Taylor_ Court specifically recognized concerns with the CCDC's overall population. Indeed, the Court made note of the CCDC's rated capacity of 283, which was exceeded in the months and weeks leading up to the plaintiff's injury. The Court specifically cited expert opinion from the plaintiff and admissions by the CCFA's own detention officers as to the CCDC's overpopulation trends. _Id._ at *6.

53. Regarding specific cell overcrowding, the Court likewise recognized that the particular cell

17

**Exhibit 3**

at issue was overcrowded on the day of the plaintiff's injury. *Id.* at *6.

54. Regarding insufficient staffing levels, the Court found that the plaintiff submitted "evidence through [plaintiff's expert] that CCDC staffing levels were insufficient to maintain a reasonably safe environment for inmates." *Id.*

55. Regarding deficient training, the Court also found that the plaintiff had submitted evidence to support those allegations. *Id.*

56. Regarding deficient inmate surveillance, the Court channeled evidence from one of the CCFA's own Lieutenants, who testified there are "lot[s] of blind spots" in the CCDC's camera system, and these issues were "common knowledge" among CCDC staff. *Id.* at *7.

57. With all of the aforementioned CCDC deficiencies at hand regarding the "state of mind" requirement to establish deliberate indifference against the CCFA, Judge Goodwin found that "[t]he record before the Court allows a reasonable inference that the alleged conditions and attendants risks to inmate safety were known to CCDC staff and administrators. Based on this evidence, there is a genuine dispute as to whether CCFA, as the entity responsible for operating the jail, knew about the complained-of conditions (i.e., overcrowding, understaffing, insufficient camera monitoring, and institutional tolerance of inmate disobedience), knew such conditions posed a substantial risk of serious harm to inmates, and nonetheless neglected to take any ameliorative action." *Id.* at *9 (citations omitted).

58. After the CCFA's Motion for Summary Judgment was denied, the *Taylor* case was resolved and then mutually dismissed on May 12, 2021.

### *Gonzalez v. Comanche Cnty. Facilities Auth.*

59. In the *Gonzalez* case, the plaintiff passed because of a myriad of reasons, including but not limited to, understaffing, overcapacity, and overcrowding of the jail.

18

**Exhibit 3**

60. This death and knowledge of the failures and inadequacies occurred in early 2023, before the incidences of this case occurred.

61. This case has just been filed and is ongoing.

<u>**The Spike in CCDC Deaths and Media Exposure**</u>

62. There was a statistically significant spike in inmate deaths at the CCDC when Jones' died in 2023. From 2012-2022, five inmates died at the CCDC. However, in 2023 alone, six inmates died. In other words, at the time of Jones' detention in the CCDC, the yearly inmate death rate at the CCDC for 2023 increased 1,200% compared to the average rate from 2012-2022. This statistical spike was the result of the CCFA's unlawful policies and customs.

63. In May 2023, Tshante Gonzalez was booked into CCDC and subsequently died due to the conditions and the facts discussed herein.

64. In August 2023, Matthew Jones was brutally attacked and subsequently passed.

65. In August 2023, Larry Cornelius died while detained at CCDC.

66. In August 2023, Antonio Ivery died while detained at CCDC.

67. Keith Bradely was also brutally attacked and subsequently passed in October of 2023 while detained at CCDC.

68. Kenard Swearengin died in November 2023 while detained at CCDC where another inmate slipped him a pill leading to his death.

69. The string of deaths at the CCDC, OSBI investigations, overcrowding, and continued constitutionally deficient conduct have received notable media attention. *See* Rains, Scott, Fourth Death in Tree Months at Comanche County Detention Center Investigated, *The Lawton Constitution*, October 26, 2023; Osborne, Deon, OSBI Investigates Comanche

19

**Exhibit 3**

County Jail: 4 Dead in 2 Months, *The Black Wall Street Times* October 31, 2023; Marsicano, Seth, KSWO Investigates Spike of Deaths Inside the Comanche County Detention Center, *ABC 7 News*, January 18, 2024; Marsicano, Seth, OSBI Requested to Investigate Latest Comanche County Detention Center Death, *ABC 7 News*, March 7, 2024; Greco, Jonathan, OSBI Investigates 2 Inmates' Deaths at Comanche County Detention Center, *KOCO Oklahoma City*, August 29, 2023; Marsicano, Seth, County Commissioner Warns of Overcrowding Inside Comanche County Detention Center, *ABC 7 News*, February 5, 2024; Marsicano, Seth, Oklahoma Task Force Proposes Solutions for Jail Overpopulation, ABC 7 News, February 6, 2024; McConnell, Kim, Comanche County Commissioners Weighing Solutions to Jail Overcrowding, *The Lawton Constitution*, October 17, 2023; Langford, KaraLee and Carter, M. Scott, Detention Center has Long History of Overcrowding, Problems Report Show, *ABC 7 News*, Southwest Ledger, May 20, 2020; Brown, Vallery, Comanche County Jail is Over Capacity, *The Oklahoman*, March 4, 2011.

### The Unlawful Policies and Customs at the CCDC Were the Moving Forces Behind Jones' Constitutional Deprivations

70. All of the currently known unlawful policies and customs that were in place at the time of Jones' detention were the moving forces behind Jones' injuries and death. All of these patterns can be congruently matched with the systematic failures at the CCDC and the individual jail personnel's acts and omissions constituting deliberate indifference towards Jones. There are striking similarities between the historical deficiencies at the CCDC and the deficiencies directly on display during Jones' detention 2023.

71. First, the CCFA's pattern of overpopulation directly strains all operations of the facility, down to inmate monitoring and the CCFA's constitutional duties of ensuring safety. On

**Exhibit 3**

the days at issue in August 2023, the CCFA was operating significantly overcapacity, which directly strained operations and the CCFA's ability to ensure inmates' safety. The strains placed on the operations of the CCFA in August 2023 directly led to Jones' attack and death. The Defendants' placement of Jones in the overcrowded and overcapacity facility denied Jones' minimal civilized measures of life's necessities, including protection, and CCFA officials were also well aware that CCFA overcrowding and overcapacity created excessive risks to detainee and inmate safety.

72. Second, the CCFA's pattern of continued overcapacity of inmates in particular cells which caused inadequate monitoring of the inmate population was in place during Jones' detention in August 2023. The particular cell areas where Jones' was detained were overcrowded, which led to Jones' brutal attack and death.

73. Third, the CCFA's patterns of failing to adequately monitor the inmate population and to perform full and proper sight checks were in place during Jones' detention in August 2023. CCFA personnel (1) did not perform all proper sight checks on Jones' cell, and (2) even when sight checks were performed, they were not carried out appropriately.

74. Fourth, the CCFA's patterns of inadequate staffing levels and ratios were in place during Jones' detention in August 2023. Similar to overpopulation issues, inadequate staffing levels and ratios result in detainees such as Jones being ignored and violence occurring.

75. Fifth, the decision of Hobbs, a person with final decision-making authority, regarding the CCFA operational issues complained of herein led to Jones' attack and death.

76. Sixth, Hobbs' ratification of decision (and related bases for them) of subordinates to whom authority was delegated regarding (1) the CCFA operational issues outlined herein and (2) these issues and concerns specifically regarding Jones' detention.

**Exhibit 3**

77. Seventh, the failures to adequately train and/or supervise CCFA personnel specifically regarding the operational issues outlined here, led to Jones' attack and death.

78. As of August 11, 2023, the CCDC had 384 inmates, 101 inmates over the capacity.

79. As of August 14, 2023, the CCDC had 391 inmates, 108 inmates over the capacity.

80. In the board minutes of the CCFA meeting on August 14, 2023, Johnny Owens stated that "CCDC was overcrowded".

81. On August 16, 2023, Jones was brutally attacked and shortly thereafter died.

82. Further, according to the autopsy narrative, which was based on the OSBI reports, Matthew Jones was thrown in front of the cell where he had just been brutally attacked. He laid there in front of the cell for almost an hour before corrections officers arrived.

## Defendants' Conduct at Issue Speaks for Itself, Created an Unreasonably Dangerous Environment, and Threatened Human Life

83. The injuries asserted in this case are the type that do not occur in the usual course of everyday conduct unless parties such as Defendants are negligent and/or engage in other unlawful conduct. Defendants had exclusive control of all instruments and processes involved in the events giving rise to this lawsuit when the injuries at issue occurred. The instrument and processes exclusively controlled by Defendants were likely to produce the harm complained of in this lawsuit.

84. Defendants' conduct at issue was:

    a.  A serious hazard to the public;

    b.  Profitable to the Defendants at the expense of others;

    c.  For a significant duration that included concealment;

    d.  Fully within Defendants' control and awareness;

    e.  In reckless disregard for the rights of others;

**Exhibit 3**

f.  Intentional and with malice towards others; and/or

g.  Life-threatening to humans.

Thus, punitive damages apply for the enumerated claims that allow an award of punitive damages.

### FIRST CLAIM FOR RELIEF: VIOLATIONS OF THE 14TH AMENDMENT VIA 42 U.S.C. § 1983 (AGAINST JOHN AND JANE DOES I-X IN THEIR INDIVIDUAL CAPACITIES)

85. Plaintiff incorporates the above paragraphs as though stated below verbatim.

86. At all times relevant herein, the rights of Jones were codified, established, and sufficiently clear that every reasonable officer and other personnel working at the CCDC would have understood that the failure to provide medical care, attention, supervision, and protection Jones violate his constitutional rights.

87. The acts and omissions of Defendants John and Jane Does I-X, who were individual detention, law enforcement, and/or other personnel that acted under color law while working at the CCDC, violated the constitutional rights of Jones in their respective capacities.

88. The respective acts and omissions of Defendants John and Jane Does I-X amounted to deliberate indifference to Jones Constitutional rights and needs.

89. Defendants John and Jane Does I-X continued to fail to supervise, check, and protect Jones.

90. Defendants John and Jane Does I-X knew of the substantial risk of harm to Jones due to the conditions of confinement, understaffing, and failure to supervise.

91. As a direct and proximate result of the acts and omissions of Defendants John and Jane Does I-X, Jones sustained personal injuries, mental injuries, pain and suffering, and death.

92. Wherefore, Plaintiff prays for judgment against Defendants John and Jane Does I-X as follows:

**Exhibit 3**

a. For actual damages in sum in excess of $75,000 and in accordance with the proof at the time of trial;

b. For all those damages afforded to the Estate of Matthew Jones for his wrongful death as provided by statute or law in an amount in excess of $75,000 and in accordance with the proof at the time of trial;

c. For punitive damages and exemplary damages as determined by the jury at the time of trial;

d. For interest thereon as provided by law;

e. For costs, expert fees, and attorneys' fees as provided by 42 U.S.C. § 1988 and any other law; and

f. For any other relief as the Court deems just and proper, whether requested herein or at a later date.

### SECOND CLAIM FOR RELIEF: VIOLATIONS OF THE 14TH AMENDMENT VIA 42 U.S.C. § 1983 (AGAINST COMANCHE COUNTY FACILITIES AUTHORITY, BOARD OF COUNTY COMMISSIONERS OF COMANCHE COUNTY, AND WILLIAM HOBBS)

93. Plaintiff incorporates the above paragraphs as though stated below verbatim.

94. Jones' constitutional rights were violated by Defendant CCFA, BOCC, and William Hobbs. The unlawful conduct occurred because of numerous CCFA, BOCC, and William Hobbs' customs, practices, and/or policies.

95. The Tenth Circuit separately recognizes that even when no single state actor engages in deliberate indifference to serve as an underlying constitutional violation, an underlying constitutional violation can still be found if the combined action or inactions of the municipality's personnel taken pursuant to a municipal policy resulted in deliberate indifference to the injured party. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127,

**Exhibit 3**

1144 (10th Cir. 2023); *Quintana v. Sante Fe Cnty. Bd. Of Commr's*, 973 F.3d 1022, 1033-34; *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166 (10th Cir. 2020); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303 (10th Cir. Mar. 21, 2022) (unpublished op.).

96. Thus, even when no individual action by a single CCFA / BOCC employee or agent rises to a constitutional violation, the CCFA / BOCC may be held liable where the sum of actions or multiple employees or agents violated Jones' constitutional rights.

97. In the instant case, the sum of actions of the personnel who interacted with Jones or who played any role in Jones' constitutional deprivations at the CCDC collectively constitutes a systemic failure and deliberate indifference.

98. The underlying constitutional violations from Defendants John/Jane Does I-X, Bill Hobbs, and/or the systemic failures occurred because of CCFA customs, practices, and/or policies.

99. At the time of Jones' detention, there were numerous unlawful informal customs amounting to widespread practices that were so permanent and well-settled as to constitute a custom or usage with the force of law. These informal customs in place at the CCDC related to Jones' injuries and death, include, but are not limited to: (1) continued overcapacity of inmates in the CCDC overall, which strained all aspects of CCDC functionality and caused inadequate monitoring of the inmate population; (2) continued overcapacity of inmates in particular cells which caused inadequate monitoring of the inmate population; (3) failures to adequately monitor the inmate population and to perform full and proper sight checks; and (4) inadequate staffing levels and ratios.

100. At the time of Jones' detention, there were decisions made directly by Hobbs, a person with final decision-making authority, regarding the aforementioned operational

**Exhibit 3**

issues. Hobbs also failed to adequately address these issues and concerns, specifically regarding Jones' detention, which all ultimately contributed to Jones' personal injuries and death.

101.     At the time of Jones' detention, Hobbs, a person with final decision-making authority, ratified the decisions (and related bases for them) of subordinates to whom authority was delegated regarding (1) the aforementioned operational issues and (2) these issues and concerns specifically regarding Jones' detention, which all ultimately contributed to Jones' personal injuries and death.

102.     The circumstances at issue regarding the underlying constitutional violations by John/Janes Does I-X, all bases constituting the underlying systemic failures, and Hobbs' own conduct, were all circumstances that arose for these respective parties on

an usual and recurring basis with which each party must deal.

103.     At the time of Jones' detention, there was a failure to adequately train and/or supervise CCFA personnel, specifically regarding the operational issues outlined herein. The failures to train and/or supervise were done with deliberate indifference.

104.     The CCFA had knowledge that the training and supervision of CCDC personnel

was inadequate due to the myriad of continued problems at the CCDC outlined herein.

105.     Despite the CCFA's knowledge on the myriad of continued problems at the CCDC outlined herein, the CCFA failed to take appropriate action regarding training and supervision. Had the CCFA taken appropriate action on these matters, Jones'

**Exhibit 3**

constitutional deprivations would not have occurred.

106.     During the events giving rise to this lawsuit, Hobbs was the Administrator of the CCDC and was the supervisor of all other CCDC personnel who deprived Jones of his constitutional rights.

107.     As the Administrator of the CCDC, Hobbs was responsible for, among other things, ensuring the safety and well-being of detainees and inmates at the CCDC, providing appropriate medical and mental health care to detainees and inmates in need of such care, creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the CCFA and CCDC, including the specific processes and failures that violated Jones' constitutional rights. He was also responsible for allowing a certain amount of inmates in the CCDC, staffing, training, and supervision.

108.     At all times relevant herein, the rights of Jones were codified, established, and sufficiently clear that every reasonable officer, medical professional, and other personnel working at the CCDC would have understood that the failure to supervise inmates, failure to staff, failure to complete sight checks, exceeding capacity, and overcrowding could lead to a violation of Jones' constitutional rights.

109.     The acts and omissions of Hobbs, who acted under color law while working at the CCDC, violated the constitutional rights of Jones. Hobbs personally participated in the underlying constitutional violations of Jones' constitutional rights.

110.     Hobbs was privy to information regarding the CCDC operations, the CCDC's dangerous and established multi-faceted deficiencies outlined herein, and Jones that would lead a reasonable person to conclude that Hobbs ignored an excessive risk of serious harm (such as inmate/detainee health or safety) to Jones or people like Jones. Hobbs had direct

**Exhibit 3**

knowledge of how the CCDC's myriad of established deficiencies harmed others on prior occasions and how those same deficiencies would continue to pose a serious and immediate risk to Jones and/or someone like Jones.

111.    Hobbs promulgated, created, implemented, and possessed responsibility for the continued operation of policies that caused Jones' constitutional deprivations.

112.    Regarding these acts and omissions that harmed Jones, Hobbs acted with deliberate indifference. Despite Hobbs' knowledge of the conditions and deficiencies at the CCDC that harmed Jones and people like Jones, Hobbs disregarded the known risks and failed to take reasonable measures to abate such risks.

113.    As a direct and proximate result of the acts and omissions of Hobbs as described herein, Jones failed to receive timely and appropriate medical intervention, care, and treatment when faced with a substantial risk of harm while confined at the CCDC.

114.    As a direct and proximate result of the acts and omissions of Hobbs as described herein, Jones sustained personal injuries, mental injuries, pain and suffering, and death.

115.    As a direct and proximate result of the acts and omissions of Defendant CCFA and all Defendants as described herein, Jones' sustained personal injuries, mental injuries, pain and suffering, and death.

116.    Wherefore, Plaintiff prays for judgment against Defendant CCFA, William Hobbs, and BOCC as follows:

   a.  For actual damages in sum in excess of $75,000 and in accordance with the proof at the time of trial;

   b.  For all those damages afforded to the Estate of Matthew Tyler Jones for his

**Exhibit 3**

wrongful death as provided by statute or law in an amount in excess of $75,000 and
in accordance with the proof at the time of trial;

    c.  For interest thereon as provided by law;

    d.  For the costs, expert fees, and attorney's fees as provided by 42 U.S.C § 1988 and
any other law; and

    e.  For any other relief as the Court deems just and proper, whether requested herein
or at a later date.[1]

## THIRD CLAIM FOR RELIEF: NEGLIGENCE
### (AGAINST DEFENDANT COMANCHE COUNTY FACILITIES AUTHORITY)

117.    Plaintiff incorporates the above paragraphs as though stated below verbatim.

118.    The CCFA owed Jones duties to, among other things (1) handle and monitor Jones'
detention in an objectively reasonable and prudent manner and (2) to protect Jones.

119.    The CCFA breached the aforementioned duties owed to Jones by failing to, among
other things, (1) handle and monitor Jones' detention in an objectively reasonable and
prudent manner and (2) to protect Jones.

120.    The CCFA, which is a public trust that has Comanche County as its sole
beneficiary, houses federal inmates at the CCDC.

121.    The CCFA's housing of federal inmates at the CCDC is memorialized by a
Detention Services Intergovernmental Agreement ("IGA") entered into with the U.S.
Department of Justice (United States Marshal Service, Prisoner Operations Division). The

---

[1] In prior litigation, the CCFA and Hobbs (in his official capacity) have admitted that either Defendant is properly named for CCDC inmate claims and that naming both would be redundant for establishing municipal liability. *See Judah v. Comanche Cnty Facilities Auth.*, Case No. CIV-14-70-JHP, Doc. 94 at p. 9, n.1 (W.D. Okla., July 23, 2015); *Taylor v. Comanche Cnty Facilities Auth.*, Case No. CIV-18-55-G, Doc. 54 at p. 19, n.1 (W.D. Okla. Dec. 2, 2019). Indeed, a claim against a government actor in the official capacity "is essentially another way of pleading an action against the county or municipality" the actor represents and is analyzed under the 42 U.S.C. § 1983 standards for claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

29

**Exhibit 3**

current Agreement Number is 64-05-0050, has an effective date of November 1, 2013, and is signed by Hobbs.

122.     Comanche County also states on its own website that since September 1, 2003, under the direction of the CCFA, the CCDC "has housed inmates from local, state, and federal agencies."[2]

123.     Furthermore, the U.S. Marshal Service website notes on its own website that "[t]he Federal Government and the Local Government establish this Agreement that allows the United States Marshals Service (USMS) to house federal detainees with the Local Government at the Comanche County Detention Center, 315, SW 5th Street, Room 208, Lawton, Oklahoma 73501 (hereinafter referred to as *the facility*)."[3]

124.     Given that the CCFA has housed inmates from federal agencies, any purported immunity from the Oklahoma Governmental Tort Claims Act is inapplicable. *See* 51 O.S. § 153.1, which states in pertinent part, that "[i]f a public trust that has as its sole beneficiary a city, town or county has a facility that houses federal inmates or inmates from another state, the immunity provided for in the Governmental Tort Claims Act shall not apply to that trust." *See also Bonilla v. Gerlach*, 2024 WL 457172 at *2 (W.D. Okla. Feb. 6, 2024) (unpublished), which recognized that 51 O.S. § 153.1 applied to defeat the defendant's request for dismissal based on exemptions found in 51 O.S. § 155.

125.     As a direct and proximate result of the acts and omissions of Defendant CCFA as described herein, Jones sustained personal injuries, mental injuries, pain and suffering, and death.

---

[2] Available at https://www.comanchecounty.us/detention-center.
[3] Available at https://www.usmarshals.gov/resources/publications/iga-comanche-county-detention-center-oklahoma-intergovernmental-agreement.

**Exhibit 3**

126.     Although not required to under 51 O.S. § 153.1 (as to Plaintiff's CCDC-related claims), Plaintiff and the other immediate family members of Jones timely served Notices regarding these events pursuant to 51 O.S. § 156.

127.     The Notices were deemed denied after the passage of 90 days without a response pursuant to 51 O.S. § 157(A).

128.     This lawsuit is timely commenced within 180 days after the expiration of the aforementioned 90-day period pursuant to 51 O.S. § 157(B).

129.     Wherefore, Plaintiff prays for judgment against Defendant CCFA as follows:

    a.   For actual damages in sum in excess of $75,000 and in accordance with the proof at the time of trial;

    b.   For all those damages afforded to the Estate of Matthew Jones for his wrongful death as provided by statute or law in an amount in excess of $75,000 and in accordance with the proof at the time of trial;

    c.   For punitive damages;

    d.   For interest thereon as provided by law;

    e.   For the costs, expert fees, and attorneys' fees as provided by any law;

    f.   For declaratory relief regarding the CCFA's lack of immunity; and

    g.   For any other relief as the Court deems just and proper, whether requested herein or at a later date.

### FOURTH CLAIM FOR RELIEF: ASSAULT AND BATTERY
### (AGAINST CALVIN RISS, EDWARD BROWN, MARKIE ISHMAN, AND CALVIN WYNN)

130.     Plaintiff incorporates the above paragraphs as though stated below verbatim.

131.     On or around August 16, 2023, Defendants attacked and stabbed the Decedent in his cell causing severe injury and eventually his death.

31

**Exhibit 3**

132.    On or around August 16, 2023, the Decedent was sent to the hospital with severe injury.

133.    On or around August 23, 2023, Decedent died as result of the injuries caused by the Defendants.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered personal injuries, other personal and financial damages, pain and suffering, and/or loss of enjoyment of life, all in an amount exceeding seventy-five thousand dollars ($75,000).

### FIFTH CLAIM FOR RELIEF: WRONGFUL DEATH
### (AGAINST CALVIN RISS, EDWARD BROWN, MARKIE ISHMAN, AND CALVIN WYNN)

135.    Plaintiff incorporates the above paragraphs as though stated below verbatim.

136.    On or around August 16, 2023, Defendants caused the death of Plaintiff's son, Decedent.

137.    The decedent's death was directly and proximately caused by the actions of Defendants Riss, Brown, Ishman, and Wynn.

138.    As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered damages in excess of $75,000.00, including burial expenses, emotional distress, and loss of love. Plaintiff's son, Decedent, also endured great pain of body and mind before his death.

### SIXTH CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST CALVIN RISS, EDWARD BROWN, MARKIE ISHMAN, AND CALVIN WYNN)

139.    Plaintiff incorporates the above paragraphs as though stated below verbatim.

140.    Defendants failed in their duty to exercise due care and not harm anyone in jail.

141.    As a direct and proximate result of Defendants' negligent actions, Plaintiff sustained injuries.

**Exhibit 3**

142.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered personal injuries, other personal and financial damages, pain and suffering, and/or loss of enjoyment of life, all in an amount exceeding seventy-five thousand dollars ($75,000).

### SEVENTH CLAIM FOR RELIEF: CONSPIRACY
### (AGAINST CALVIN RISS, EDWARD BROWN, MARKIE ISHMAN, AND CALVIN WYNN)

143.    Plaintiff incorporates the above paragraphs as though stated below verbatim.

144.    Defendants and unnamed co-conspirators all conspired and worked together to cause injury and, eventually, the death of Matthew Jones.

145.    The underlying causes of action are Assault, Battery, Intentional Infliction of Emotional Distress, and Wrongful Death.

146.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered personal injuries, other personal and financial damages, pain and suffering, and/or loss of enjoyment of life, all in an amount exceeding seventy-five thousand dollars ($75,000).

[Continued to Next Page]

**Exhibit 3**

**WHEREFORE,** Plaintiff prays for a judgment against Defendants in an amount in excess of seventy-five thousand dollars ($75,000), plus additional consequential damages and punitive damages, including attorney's fees and costs and any other relief to which he may be entitled due to prosecution of this action, pre- and post-judgment interest, and any further relief which the Court determines is due Plaintiff.

Respectfully submitted,

Charles L. Richardson, OBA No. 13388
Colton L. Richardson, OBA No. 33767
**RICHARDSON RICHARDSON BOUDREAUX**
7447 South Lewis Avenue
Tulsa, OK 74136
(918) 888-8000 Phone
*Attorneys for Plaintiff*

**Exhibit 3**